**In re KZK LIVESTOCK, INC., Debtor.**

**Richard E. BARBER, as Trustee of KZK Livestock, Inc., Plaintiff,**

v.

**CITIZENS NATIONAL BANK OF MACOMB, Defendant.**

Bankruptcy No. 91–82986.

Adversary No. 95–8142.

United States Bankruptcy Court, C.D. Illinois.

May 21, 1998.

Alan J. Fulkerson, Chicago, IL, for Plaintiff.

Gary T. Rafool, Rafool & Bourne, Peoria, IL, for Defendant.

## OPINION

WILLIAM V. ALTENBERGER, Chief Judge.

Kendall Knowles (KNOWLES) was the sole shareholder, director and president of KZK Livestock, Inc. (KZK). KZK had a checking account at the First National Bank of Blandinsville (FIRST). KNOWLES was also a 60% shareholder, a director, and the principal officer of Southwest Feed & Grain, Inc. (SFG). SFG had a checking account at the Citizens National Bank of Macomb (CITIZENS). KNOWLES was not an authorized signatory on the CITIZENS account. Both KNOWLES and SFG had separate commodity trading accounts with ADM Investor Services, Inc. (ADM). KNOWLES was an authorized signatory on the SFG account with ADM.

On October 23, 1991, KNOWLES telephoned CITIZENS and directed it to wire transfer the sum of $116,000 from SFG's checking account to SFG's trading account at ADM. On the same date the funds were received, ADM transferred $54,025 from

SFG's trading account to KNOWLES' trading account at ADM, in order that both accounts would be properly margined. On October 24, 1991, KNOWLES again telephoned CITIZENS and directed it to wire transfer the sum of $135,000 from SFG's checking account to SFG's trading account at ADM. These transfers satisfied margin calls, which resulted from positions taken by KNOWLES, individually and on SFG's behalf. Soon after, when CITIZENS became aware that the wire transfers were made without proper authorization, CITIZENS contacted SFG and demanded that the funds be returned to the SFG checking account.

On November 14, 1991, KNOWLES wrote three checks totaling $240,000 drawn on KZK's account at FIRST, each payable to ADM. The checks were delivered to ADM for deposit into KNOWLES' trading account at ADM. On November 14, 1991, KNOWLES gave telephonic directions to transfer a portion of the deposit from his trading account to SFG's trading account with ADM. ADM advised KNOWLES that in order to effect the requested transfer it would require written instructions together with proof that the KZK checks were good funds. On November 19, KNOWLES followed up with a written instruction directing ADM to transfer $190,-409.93 from his trading account to SFG's trading account and from that trading account on to CITIZENS for deposit into SFG's checking account with CITIZENS. After making sure that the KZK checks cleared FIRST, ADM followed KNOWLES' instructions and $190,409.93 was ultimately deposited into SFG's checking account at CITIZENS.

After KZK's Chapter 11 filing in bankruptcy was converted to one under Chapter 7 and a Trustee in bankruptcy (TRUSTEE) was appointed, the TRUSTEE sued CITIZENS to recover the $190,409.93.[1] Originally, the complaint contained 6 counts. As the litigation progressed, the TRUSTEE dropped 5 of the 6 counts, leaving only Count II, alleging a fraudulent conveyance under § 548(a)(2) of the Bankruptcy Code and seeking recovery from CITIZENS under § 550(a)(1) of the Bankruptcy Code, 11 U.S.C. §§ 548(a)(2) and 550(a)(1). Both the TRUSTEE and CITIZENS filed motions for summary judgment, which were heard and taken under advisement.

■ § 548(a)(2) provides in pertinent part as follows:

(a) The trustee may avoid any transfer of an interest of the debtor in property, ... if the debtor ...

(2) (A) received less than a reasonably equivalent value in exchange for such transfer or obligation;

and § 550(a)(1) provides in pertinent part as follows:

(a) [T]o the extent that a transfer is avoided under section ... 548, ... of this title, the trustee may recover, for the benefit of the estate, the property transferred, or, if the court so orders, the value of such property, from—

(1) the initial transferee of such transfer or the entity for whose benefit such transfer was made;

The TRUSTEE does not contend that CITIZENS was a "transferee", rather that it was an "entity for whose benefit such transfer was made." The TRUSTEE argues that the various transfers, starting with the one from the KZK account at FIRST and culminating with the one to CITIZENS were made for the benefit of CITIZENS, because CITIZENS was liable to SFG for the im-

---

1. A check kiting scheme operated by KNOWLES using a KZK bank account preceded KZK's bankruptcy and he filing of three adversary proceedings under § 548 of the Bankruptcy Code against three different types of Defendants, all of which were presented for decision by motions for summary judgment that were taken under advisement. This adversary involves the TRUSTEE's action to recover funds paid from KZK's account to another bank that had improperly transferred funds from a SFG account and were repaid from the KZK account Adversary # 95-

8069 involves a lender/borrower relationship where the TRUSTEE is attempting to recover loan repayments from the creditor. Adversary # 95–8015 involves the TRUSTEE's action to recover funds paid from KZK's account to another bank to cover the check kite. Being concerned that there could be common legal principles that would impact all three cases, this Court elected to consider the issues of all three cases at the same time. Therefore, all three Opinions are being issued concurrently.

proper wire transfers out of the SFG checking account, which liability was eliminated by the transfers out of the KZK account that ultimately found their way back to the SFG checking account at CITIZENS.

In *Bonded Financial Services v. European Amer. Bank,* 838 F.2d 890 (7th Cir.1988), one Michael Ryan owned both Bonded Financial Services and Shamrock Hills Farms and had borrowed $655,000 from the bank. Bonded then sent the bank a check payable to the bank with a direction to deposit it into Michael Ryan's account at the bank. Ten days later Michael Ryan instructed the bank to debit the account in the amount of $200,000 to reduce the balance of the loan, which was done. Bonded's Chapter 7 Trustee in bankruptcy sued the bank under § 548 and § 550, and on appeal the Seventh Circuit Court of Appeals had before it the issue of whether the bank was an "entity for whose benefit such transfer was made".

The court concluded that the categories "transferee" and "entity for whose benefit such transfer was made" are mutually exclusive and defined the phrase "entity for whose benefit such transfer was made" by stating:

> [T]he paradigm "entity for whose benefit such transfer was made" is a guarantor or debtor—someone who receives the benefit but not the money. In the Firm–Guarantor–Lender example at the end of Part I, when Firm pays the loan, Lender is the initial transferee and Guarantor, which no longer is exposed to liability, is the "entity for whose benefit".... (Citations) Section 550(a)(1) recognizes that debtors often pay money to A for the benefit of B; that B may indeed have arranged for the payment (likely so if B is an insider of the payor); that but for the payment B may have had to make good on the guarantee or pay off his own debt; and accordingly that B should be treated the same way initial recipients are treated. If B gave value to

the bankrupt for the benefit, B will receive credit in the bankruptcy, see 11 U.S.C. § 547(c)(1)(A), § 548(c), and if not, B should be subject to recovery to the same extent as A—sometimes ahead of A, although § 550 does not make this distinction. Someone who receives the money later on is not an "entity for whose benefit such transfer was made"; only a person who receives a benefit from the initial transfer....

█ In the case before this Court, CITIZENS is not the "entity for whose benefit such transfer under was made," because it received the money. As it received the money it is a transferee under § 550(a)(1) or (2), and as the terms "transferee" and "entity for whose benefit such transfer was made" are mutually exclusive under § 550(a)(1), it cannot be said it was an "entity for whose benefit the transfers were made". Furthermore, CITIZENS cannot be liable under § 550(a)(1) as under that section the benefit element relates to an initial transfer and CITIZENS received the funds from a mediate transfer. Both of these conclusions are supported by the undisputed facts. The checks drawn on FIRST were payable to ADM and deposited into KNOWLES trading account at ADM. From there they were transferred to SFG's trading account at ADM. From there they were transferred to CITIZENS for deposit into SFG's account at CITIZENS. CITIZENS ended up with the funds as a mediate transferee.[2]

For these reasons, judgment should be entered for CITIZENS and against the TRUSTEE.

This Opinion is to Serve as findings of Fact and Conclusions of Law pursuant to Rule 7052 of the Rules of Bankruptcy Procedure.

---

2. The court in *Bonded* also discussed the issues of whether the Bank was liable as an initial or a subsequent transferee, concluding it wasn't. This Court need not make a similar determination as the TRUSTEE has limited his cause of action to one based on CITIZENS having received a benefit. In support of his position that COLCHESTER received the benefit of the transfers, the TRUSTEE would overlook the transfers to ADM and KNOWLES and treat them as mere conduits, asking this Court to ignore the fact that KNOWLES was a separate entity from KZK. This is exactly what the Defendant in Adversary # 95–8069 is asking this Court to do and which the TRUSTEE opposes. The TRUSTEE cannot have it both ways, one way in this case and a contrary way in the other adversary.